STANLEY G. CURTIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Curtis v. Commissioner
Docket No. 7756-72.
United States Tax Court
T.C. Memo 1978-265; 1978 Tax Ct. Memo LEXIS 249; 37 T.C.M. (CCH) 1144; T.C.M. (RIA) 78265; July 19, 1978
*249 Thomas W. O'Connell, for the petitioner; and Stanley G. Curtis, pro se. George W. Connelly and Vernon J. Owens, for the respondent. QUEALY
QUEALY, Judge: Respondent determined deficiencies in petitioner's Federal income tax returns and additions to tax under section 6653(b) as follows: Additions to tax Year
Deficiency
under section 6653(b)
1960
$ 5,885.85
$ 2,942.92
1961
4,292.42
2,146.21
1962
13,142.81
6,571.40
1963
3,068.03
1,534.01
1964
16,734.68
8,367.34
1965
9,254.11
4,627.06
1966
12,512.45
6,256.23
1967
16,043.00
8,021.50
1968
32,325.75
16,162.88
The issues remaining for decision are as follows: (1) Whether respondent has properly recomputed petitioner's taxable income for the taxable years 1960 through 1968. (2) Whether a part of the underpayments during the years in issue is due to fraud within the meaning of section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, Stanley G. Curtis, hereinafter sometimes *250 referred to as petitioner, resided in Hollywood, Florida. Petitioner filed his Federal income tax returns for each of the taxable years 1960 through 1968, inclusive, and an amended 1968 return with the District Director of Internal Revenue in Buffalo, New York. Petitioner was engaged in the general practice of law during the years in issue. His offices were located near the courthouse in Rochester, New York. Petitioner was a "courthouse lawyer." He often accepted clients who claimed they could not afford the fees charged by other attorneys in the city. Petitioner married the former Alvera Antonelli in 1969. She was the daughter of Amerigo Antonelli. Amerigo Antonelli was a prosperous Italian immigrant engaged in the business of manufacturing fireworks. During the early 1940's, he obtained a contract from the United States to manufacture munitions for the war effort. During 1943, Amerigo Antonelli was indicted by a Federal grand jury in Rochester, New York, on various charges which, in sum and substance, accused his firm of making bombs for the Government which were "duds." When charged, however, he was unable to raise bail from his personal resources and was thus forced *251 to borrow money from third parties. During 1944, he was convicted on one of the charges, and his sentence included a period of incarceration. Amerigo Antonelli moved to be permitted to appeal his conviction as a pauper. His conviction was affirmed. Amerigo Antonelli began serving his sentence of imprisonment in November 1946. As a result of poor health, he was released during March 1947. He died in November 1948. Alvera received nothing from his estate. Petitioner's mother-in-law, Lucy DeRitis, died testate on July 14, 1952. In her will executed October 17, 1950, she left nothing to Alvera. This case has traveled a very long and rocky road. Respondent has been preoccupied with discovery and petitioner has been unwilling to meet the issues on the merits. A trial was held in Miami, Florida, from May 31, 1977, to June 3, 1977. Petitioner was represented by counsel at this proceeding. At the conclusion of the case, petitioner's counsel in the presence of and by agreement with petitioner agreed that the amount of income upon which the tax liability and penalty pursuant to section 6653(b) should be computed was, as follows: Year
Amount
1964
$ 22,204.48
1965
10,340.89
1966
27,150.35
1967
12,033.11
1968
48,521.10
*252 As a result, respondent thereafter submitted to petitioner a recomputation showing that there were deficiencies in Federal income taxes and additions to the tax due from the petitioner as follows: Additions to tax Year
Income Tax
under sec.6653(b)
1960
none
none
1961
none
none
1962
none
none
1963
none
none
1964
$ 6,359.00
$ 3,180.00
1965
2,145.00
1,073.00
1966
9,499.00
4,750.00
1967
2,512.00
1,256.00
1968
18,627.00
9,314.00
Petitioner refused to execute the document and moved to reopen the record in order to present testimony to show the sources of his unaccounted for funds. The Court granted petitioner's motion. A further trial was held in Miami, Florida, on December 12, 1977. After reviewing the testimony at such trial, the Court finds that there are deficiencies and penalties due as follows: Additions to tax Year
Income Tax
under sec. 6653(b)
1960
none
none
1961
none
none
1962
none
none
1963
none
none
1964
$ 6,359.00
$ 3,180.00
1965
2,145.00
1,073.00
1966
9,499.00
4,750.00
1967
2,512.00
1,256.00
1968
18,627.00
9,314.00
OPINION Petitioner had been a "courthouse *253 lawyer" in Rochester, New York, for a number of years. Petitioner was married to the daughter of a well-to-do Italian immigrant. Respondent determined that petitioner omitted income from his Federal income tax returns for the years in issue with the intent to commit fraud within the meaning of section 6653(b). A trial was held in Miami, Florida, from May 31 to June 3, 1977, in which petitioner and respondent agreed upon the amount of taxable income upon which the deficiencies and penalties should be based. However, petitioner subsequently refused to approve the recomputation reflecting the omission of income previously agreed to and moved to reopen the case to prove the source of the unaccounted for funds. A further trial was held in which petitioner presented testimony relating to the source of his funds. As the Court said at the trial, petitioner's testimony was so implausible that the Court might be persuaded to believe petitioner only because if petitioner was to fabricate facts, he would have selected a more plausible explanation. Petitioner's testimony went back to the 1940's and related to the activities of petitioner's father-in-law, Amerigo Antonelli. Mr. Antonelli *254 was indicted for fraud in his dealings with certain defense contracts with the Government. Petitioner testified that Mr. Antonelli gave $ 135,000 to his wife's sister to hold for the care of the family prior to his being incarcerated in 1946. Some years later, petitioner testified that his wife's sister gave him the money to hold for his wife. The Court cannot place any credence on petitioner's testimony. Petitioner offered no objective evidence to indicate that the alleged $ 135,000 ever existed, and there is evidence from which a contrary inference could be drawn. The evidence indicates that Amerigo Antonelli, the alleged source of the funds, filed a "pauper's oath" in order to prosecute an appeal of his criminal conviction without cost to him. Furthermore, during the long course of the investigation of petitioner's returns for the years in question, no mention was ever made of the alleged gift by Mrs. Curtis' father of the $ 135,000. Petitioner did not offer any explanation as to the source of his funds at that time nor at any time prior to the trial or during the long course of this proceeding. There is no means of corroboration of petitioner's testimony at this late *255 date by third parties. The Court is unwilling to accept petitioner's explanation for the unaccounted funds which resulted in the agreement of the parties on June 3, 1977, with respect to petitioner's taxable income for the years in question. Decision will be entered in accordance with the recomputation submitted by the respondent.